1

2   Gabriel S. Galanda, WSBA # 30331
    R. Joseph Sexton, WSBA # 38053
3   Ryan D. Dreveskracht, WSBA # 42593
    Shelby R. Stoner, WSBA # 52837
4   GALANDA BROADMAN, PLLC
    P.O. Box 15146
5   Seattle, WA 98115
    Phone: (206) 557-7509
6   *Attorneys for Plaintiffs*

7

8                 UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF WASHINGTON
9                         AT SPOKANE

10

11  ZACHERIAH ELWELL, in his personal     No.
    capacity; E.E., a minor by and through
12  his guardian ad litem, JUDSON GRAY;
    Q.M., a minor by and through his       COMPLAINT
13  guardian ad litem, JUDSON GRAY;
    JAMES BATES, as the Personal           JURY DEMANDED
14  Representative for the Estate of AMBER
    MARCHAND,
15
                        Plaintiffs,
16
    v.
17
    OKANOGON COUNTY, a political
18  subdivision of the State of Washington;
    PAUL BUDROW, in his personal
19  capacity; DAVE YARNELL, in his
    personal capacity; STEFAN WOLAK,
20  in his personal capacity; BRADLEY
    CRAIG, M.D., in his personal capacity;
21  CARINE WOOD, in her personal
    capacity; BRIANA PARDO, in her
22  personal capacity; MAX ORNELAS, in
    his personal capacity; JEREMEY
23  CALENTINE; in his personal capacity;
24

25

COMPLAINT - 1

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

RANDY CLINE, in his personal capacity; DUSTY MULLEN, in his personal capacity; BRIAN KRUEGER, in his personal capacity; JACOB CARAVALHO, in his personal capacity; and JOHN AND JANE DOES 1–5,

Defendants.

## I. INTRODUCTION

1.     This wrongful death action is brought against Defendant Okanogan County and its officials, employees, and agents, in their personal capacities, by Plaintiff James Bates, as the Personal Representative for the Estate of Colville Tribal member Amber Marchand, a pretrial detainee at all times relevant to this action, and Amber's children, Plaintiffs Zacheriah Elwell, E.E., and Q.M., by and through their guardian ad litem, Judson Gray. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, to redress the deprivation under color of law of Amber's and Plaintiffs' own rights, privileges, and immunities secured by the Fourteenth Amendment of the U.S. Constitution; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and Washington common law.

2.     Defendants have a policy and practice of denying life-saving medications and treatment to pretrial detainees and inmates who are suffering from opioid use disorder—Colville Tribal members in particular—like Amber. This policy is both dangerous and discriminatory. It singles out a particularly vulnerable group

COMPLAINT - 2

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

of disabled people, forces them to suffer unnecessarily from painful opioid withdrawal, and subjects them to an increased risk of death and suicide.

3.    In this case, Amber suffered a wrongful and unnecessary death due to Defendants' denial of life-saving medications and treatment to Amber and their negligence, gross negligence, and deliberate indifference to Amber's serious medical condition and her conditions of confinement.

4.    Plaintiffs seek monetary damages to redress and remedy the deprivation of Amber's constitutional, statutory, and common law rights as a pretrial detainee, Plaintiffs' loss of parental and familial relations, and punitive damages as available by law. Plaintiffs also seek relief against the Defendants caused by the policies, practices, and customs of Okanogan County Jail deputies and medical staff as violative of Amber's constitutional, statutory, and common law rights, and those of all other pretrial detainees who have, are, or will be subjected to the totality of conditions and practices of Okanogan County Jail deputies and medical staff.

## II.   PARTIES

5.    Plaintiff Zacheriah Elwell is Amber's son. He brings suit in his personal capacity and is entitled to damages for the loss of his mother.

6.    Plaintiff E.E., a minor, is Amber's son. He brings suit in his personal capacity by and through his guardian ad litem, Judson Gray, and is entitled to damages for the loss of his mother.

COMPLAINT - 3

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

7.     Plaintiff Q.M., a minor, is Amber's son. He brings suit in his personal capacity by and through his guardian ad litem, Judson Gray, and is entitled to damages for the loss of his mother.

8.     Plaintiff James Bates is an attorney (WSBA # 47468) residing and doing business in Pierce County, Washington. James is the Personal Representative of the Estate of Amber Marchand. This is an action arising from Amber Marchand's easily preventable death and Defendants' negligence, gross negligence, and deliberate indifference to her serious medical condition. The claims herein include all claims for damages available under federal and Washington law to Amber, her Estate, and all statutory and actual beneficiaries.

9.     Defendant Okanogan County is a municipal corporation responsible for administering the Okanogan County Jail ("Jail"). The Jail is an adult corrections facility that is required to provide proper custody, control, and supervision for county, state, tribal, and federal detainees and inmates in Okanogan County. Okanogan County is, and was at all times mentioned herein, responsible for the actions or inactions, and the policies, procedures, and practices/customs of all health services relating to the Jail, including the provision of medical treatment at outside facilities when necessary.

10.     Defendant Paul Budrow is the Okanogan County Sheriff. He supervised, administered, and managed all Okanogan County employees and corrections facilities at the time of Amber's injuries and was responsible for ensuring

COMPLAINT - 4

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

the presence and implementation of proper policies, procedures, and training. Defendant Budrow was also responsible for the training, supervision, and discipline of Okanogan County employees and/or agents, including the below individually named Defendants. He has ratified the acts and omissions of the employees described below by affirming that he approves his subordinates' decisions, acts, and omissions, and the basis for them. He is sued in his personal capacity only.

11.     Defendant Dave Yarnell is the Okanogan County Undersheriff. He supervised, administered, and managed all Okanogan County employees and corrections facilities at the time of Amber's injuries and was responsible for ensuring the presence and implementation of proper policies, procedures, and training. Defendant Yarnell was also responsible for the training, supervision, and discipline of Okanogan County employees and/or agents, including the below individually named Defendants. He has ratified the acts and omissions of the employees described below by affirming that he approves his subordinates' decisions, acts, and omissions, and the basis for them. He is sued in his personal capacity only.

12.     Defendant Stefan Wolak is Okanogan County's Chief Corrections Deputy. He supervised, administered, and managed all Jail employees and corrections facilities at the time of Amber's injuries, and was responsible for ensuring the presence and implementation of proper policies, procedures, and training. Defendant Wolak was also responsible for the training, supervision, and discipline of Jail employees and/or agents, including the below individually named

COMPLAINT - 5

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

Defendants Jane and John Does 1–5. He has ratified the acts and omissions of the employees described below by affirming that he approves his subordinates' decisions, acts, and omissions, and the basis for them. He is sued in his personal capacity only.

13.    Defendants Budrow, Yarnell, and Wolak shall be referred to collectively as "Supervisory Defendants." At all material times, each of Okanogan County's Supervisory Defendants acted under color of law and was a state actor.

14.    Upon information and belief, Defendant Bradley R. Craig, MD, was at all relevant times Okanogan County's Jail Physician and/or Jail Physician Preceptor and an employee, subcontractor, and/or agent of Okanogan County acting within the scope of his employment. The Jail Physician is purportedly responsible for undertaking the actions needed to provide basic health care to detainees and inmates at the Jail and is always allegedly "on-call." The Jail Physician Preceptor is also responsible for reviewing the standards of care provided to detainees and inmates and is the final medical authority. He is sued in his personal capacity only.

15.    Upon information and belief, Defendant Carine Wood, who is certified as a Pharmacy Technician, was at all relevant times employed by Okanogan County as the Jail's Medical Officer and/or Correctional Health Coordinator and acting within the scope of her employment. The Correctional Health Coordinator's basic function is to be the Jail staff member handling an emergency medical event and to

COMPLAINT - 6

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

implement and document all instructions provided by the Jail Physician. She is sued in her personal capacity only.

16.    Defendants Craig and Wood shall be referred to collectively as "Policymaking Defendants." At all material times, each of Okanogan County's Policymaking Defendants acted under color of law and was a state actor.

17.    Defendant Briana Pardo, PMHNP-BC, was at all relevant times the Jail's nurse practitioner or healthcare professional responsible for administering medical care to Okanogan County detainees and inmates, including Medications for Opioid Use Disorder; upon information and believe, Defendant Pardo was at all relevant times an employee, subcontractor, and/or agent of Okanogan County acting within the scope of her employment. She is sued in her personal capacity only.

18.    Defendant Max Ornelas was at all relevant times employed by Okanogan County as a Corrections Deputy at the Jail and acting within the scope of his employment. As a jailer and not a healthcare professional, Defendant Ornelas's role was to serve as a gatekeeper for medical personnel capable of treating detainees and inmates. He is sued in his personal capacity only.

19.    Defendant Jermey Calentine was at all relevant times employed by Okanogan County as a Corrections Deputy at the Jail and acting within the scope of his employment. Defendant Calentine knew that Amber needed medical care but took no steps to provide any semblance of care to prevent Amber's death and

COMPLAINT - 7

otherwise failed to notify the Jail Physician of Amber's medical issues. He is sued in his personal capacity only.

20.    Defendant Randy Cline was at all relevant times employed by Okanogan County as a Sergeant at the jail and acting within the scope of his employment. Upon information and belief, Defendant Cline knew that Amber needed medical care but took no steps to provide any semblance of care to prevent Amber's death and otherwise failed to notify the Jail Physician of Amber's medical issues. He is sued in his personal capacity only.

21.    Defendant Dusty Mullen was at all relevant times employed by Okanogan County as a Corrections Deputy and acting within the scope of his employment. Defendant Mullen knew that Amber needed medical care, but took no steps to provide any semblance of care to prevent Amber's death and otherwise failed to notify the Jail Physician of Amber's medical issues. He is sued in his personal capacity only.

22.    Defendant Brian Krueger was at all relevant times employed by Okanogan County as a Corrections Deputy and acting within the scope of his employment. Defendant Krueger knew that Amber needed medical care but took no steps to provide any semblance of care to prevent Amber's death and otherwise failed to notify the Jail Physician of Amber's medical issues. He is sued in his personal capacity only.

COMPLAINT - 8

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

23.     Defendant Jacob Caravalho was at all relevant times employed by Okanogan County as a Corrections Deputy and acting within the scope of his employment. Defendant Caravalho knew that Amber needed medical care but took no steps to provide any semblance of care to prevent Amber's death and otherwise failed to notify the Jail Physician of Amber's medical issues. He is sued in his personal capacity only.

24.     Defendants John and Jane Does 1–5 are employees, subcontractors, and/or agents of Okanogan County. These Defendants are persons who knew that Amber needed medical care and mental health treatment but took no steps to provide any semblance of care to prevent Amber's death and otherwise failed to notify the Jail Physician of Amber's medical and mental health issues. These Defendants are sued in their personal capacities only.

### III.   JURISDICTION AND VENUE

25.     The Court has subject matter jurisdiction over the federal claims brought under 42 U.S.C. §§ 1983 and 12132 and 29 U.S.C. § 794 pursuant to 28 U.S.C. § 1331 and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)–(b)(2) because Okanogan County, where the events and omissions giving rise to the claims asserted herein, is located in this District; and, upon information and belief, all individually named Defendants reside in Okanogan County.

COMPLAINT - 9

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

27.    On July 3, 2025, Plaintiffs filed a standard Claim for Damages form with the Okanogan County HR Director/Risk Management, pursuant to Chapter 4.96 RCW. More than sixty (60) days have elapsed since the claim was filed. The notice of claim provisions required by RCW 4.96.020 have been satisfied.

## IV.    STATEMENT OF FACTS

### A.    *The Jail's Repeated Failure to Adopt Safety and Medical Policies and Procedures*

28.    It has been widely reported that the Jail has experienced disproportionately greater rates of death, including tragic and unnecessary drug-related deaths and suicides (or near deaths and attempted suicides) under circumstances nearly identical to those leading to Amber's death.

29.    In 2011, a male detainee with mental health issues was found by Jail staff hanging from a sheet in his cell; his lips, fingers, arms, and face were blue by the time the Corrections Deputy found him.

30.    In 2012, a Colville Tribal member female detainee, who was experiencing severe drug-related withdrawal symptoms was placed in a holding cell—where she was forced to suffer alone for up to four days, while in lying in her own vomit, feces, and menses.

31.    In 2013, a female detainee, who admitted she had recent thoughts of self-harm and was deprived of medically necessary drugs for more than three days while in Jail, was found dead in her cell; her hand felt "very cold and stiff to the touch," and her skin was pale and had a blueish tint.

COMPLAINT - 10

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

32.     Again in 2013, a Colville Tribal member female detainee was found hanging from a sheet in her cell, who suffered from mental health issues and was likely under the influence of methamphetamines at the time; Jail staff found a medical request form in her cell, asking: "Can I please see a woman counselor for mental health."

33.     In 2014, a male detainee, who was severely nauseous and vomiting because of severe, drug-related withdrawals, begged to be taken to the hospital. Jail staff refused his requests, and he was later found dead in his cell.

34.     In 2018, a Colville Tribal member male detainee, started uncontrollably vomiting and experiencing other drug-related withdrawals and begged to be taken to the hospital; Jail officials refused until it was almost too late to save him.

35.     Again in 2018, a female detainee with mental health issues was left in a holding cell lying in her own urine, immobile and unable to speak, for 21 hours; after she was finally transferred to the hospital, she suffered a major pulmonary embolism resulting in her death.

36.     Despite these deaths, Okanogan County did not adopt policies or procedures regarding suicide prevention or opiate withdrawal or otherwise train Jail employees on preventing inmate suicide or deaths related to drug-related withdrawals.

37.     In 2017, the Washington State Department of Corrections ("DOC") conducted an audit of the Jail, which identified "'slippage' or 'cracks' where policy

COMPLAINT - 11

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

and security enhancements and processes are necessary to reduce risk to staff and offenders and mitigate identified causal factors."

38.     The 2017 DOC audit recommended several operational changes to address the safety of inmates and staff at the Jail.

39.     For example, at the time, the Jail had no formal process for conducting announced and unannounced inspections of offender living areas; and, in practice, Jail deputies failed to enter the living space while conducting tier checks or rounds. The DOC audit concluded that these failures "places the [inmates] at risk for untimely discovery of offender death or injury" and recommended cell checks whereby Jail employees physically enter inmate living areas (rather than simply scanning the electronic record-keeping system outside the the living unit).

40.     Critically here, and as explained below, the 2017 DOC audit report concluded that the Jail's outdoor recreation area has an enclosed bathroom area that impedes employee visibility and "could easily provide undue privacy and aide in concealing illegal or dangerous actions." The DOC audit recommended that the Jail "reduc[e] the enclosure wall surrounding the recreation restroom in order to improve visibility and offender safety."

41.     Okanogan County, however, never adopted the recommendations of the 2017 DOC audit report. Rather, Okanogan County "buried the report and did not take any action on the recommendations provided" by the DOC.

COMPLAINT - 12

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

42.    By the time of Amber's death in 2023, about six years after the 2017 DOC audit was completed, the Jail *still* had not adopted any formal policies or procedures.

43.    Instead, by 2023, Okanogan County had purchased a digital policy manual for the Jail and was allegedly in the process of "review and roll out" shortly before Amber died. Similarly, although Okanogan County had a procedures manual that was developed for the Jail, it was not in use at the time of Amber's death.

44.    Without formal policies or procedures, Okanogan County and its policymakers and supervisors set into place a policy, practice, or custom of not conducting adequate medical screenings for detainees or inmates, which are administered by non-health trained Jail employees.

45.    Okanogan County and its policymakers and supervisors set into place a policy, practice, or custom of not adequately classifying detainees or inmates who have special management needs.

46.    Okanogan County and its policymakers and supervisors set into place a policy, practice, or custom of not referring detainees or inmates suffering severe withdrawal symptoms to licensed acute care facilities and/or hospital settings.

47.    Instead, Okanogan County had an established practice of requiring detainees or inmates who are in need of urgent, lifesaving medical care to wait until Tuesdays or Thursdays to be seen virtually by the Jail's medical provider. This

COMPLAINT - 13

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

established practice violates the Jail's written (although apparently never-used) procedures specifying that the Jail Physician would be "on-call at all times."

48.    Okanogan County and its policymakers and supervisors set into place a policy, practice, or custom of failing to monitor detainees or inmates suffering from medical detoxification.

49.    Okanogan County and its policymakers and supervisors set into place a policy, practice, or custom of failing to train Jail employees in, *inter alia*, screening, monitoring, or treating detainees or inmates suffering from drug-related withdrawals or suicidal ideation; implementing detox or suicide prevention protocols; or in responding to medical emergencies using CPR or an automated external defibrillator ("AED").

50.    Okanogan County and its policymakers and supervisors set into place a policy, practice, or custom of failing to hire qualified medical personnel at the Jail, as employees or subcontractors, to provide widely accepted community standards of care regarding medical services for ill or injured detainees or inmates of the Jail.

51.    Okanogan County and its policymakers and supervisors set into place a policy, practice, or custom of failing to meet widely accepted community standards of care regarding medical services for ill or injured detainees or inmates of the Jail.

52.    Okanogan County and its policymakers and supervisors set into place a policy, practice, or custom of failing to hold regular staff meetings to monitor, plan, or resolve problems with healthcare delivery.

COMPLAINT - 14

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

53.     Okanogan County and its policymakers set into place a policy, practice, or custom of failing to abide by national standards such as those set by the National Commission on Correctional Health Care ("NCCHC") and the American Medical Association.

54.     Jail supervisors and policymakers were aware of, yet deliberately indifferent to, these constitutionally deficient policies, practices, or customs (or lack thereof), which inevitably led to delays or lapses in inmate medical care, serious harm and injury, and often death.

**B.     Amber's Suffering and Death at the Jail**

55.     Leading up to Amber's death, she had a well-documented history of opioid use disorder ("OUD"). The Jail and its employees were fully aware of Amber's OUD and mental health issues, since at least December 2019.

56.     Amber was again booked into the Jail at around 11:15 p.m. on Sunday, April 23, 2023.

57.     At 12:54 a.m. on Monday, April 24, Defendant Max Ornelas (J-8), a non-health trained Corrections Deputy, completed a medical questionnaire for Amber. Defendant Ornelas reported that Amber did not appear to be under the influence of drugs or alcohol; her behavior did not suggest risk to Jail staff or other prisoners; and her behavior did not suggest risk of suicide. When asked, Amber reported that she had not taken any drugs in the last 24 hours and did not have thoughts of harming herself or others. Defendant Ornelas has no medical training

COMPLAINT - 15

but is allowed to conduct medical screenings based on Okanogan County's policy, practice, or custom of failing to conduct adequate medical screenings for detainees and inmates.

58.     Although the Jail Procedure Manual was apparently not in use when Amber was booked into the Jail, it states that if an inmate is presented for booking and presents a medical issue, a fit for jail exam will be assessed either by the Jail medical staff, if available, or corrections staff (in consultation with on-call medical staff, emergency room personnel, medical staff comments on medical release form, and the Chief Corrections Deputy). If the Jail staff person is "unsure of the prisoner's medical condition after utilizing the above resources," that staff person "will send any prisoner for a Fit For Jail exam."

59.     After being booked into the Jail, Amber was assigned a bunk in a D-Mod Cell, a dormitory style housing unit.

60.     The next day, on Tuesday, April 25, at around 10:30 a.m., Amber notified Defendant Jermey Calentine (J-9), a Corrections Deputy, that she was "going through it"—i.e., withdrawing from drugs—and that the D-Mod Cell was too loud. She requested to be moved from the D-Mod Cell to a different cell.

61.     Defendant Calentine allegedly offered to bring Amber forms used by detainees and inmates to request medical attention, called "Medical Kites," to complete if she was feeling sick, so that she could be treated by medical staff. Defendant Calentine, however, refused to move Amber to a different cell or otherwise

COMPLAINT - 16

ensure that her serious medical needs were addressed. According to the Jail's Procedure Manual (again, which was apparently not in use), detainees and inmates suffering from drug withdrawals warrant "special housing designations in accordance with the Inmate's special needs."

62.     After Amber refused to return to her D-Mod Cell, Defendant Calentine placed Amber on lock down for refusing Jail staff orders and moved her to I-Mod Cell # 2.

63.     On Wednesday, April 26, while Amber remained in I-Mod Cell # 2, she submitted a Yellow Kite that day, a Medical Kite requesting a new mattress, blankets, clothes, and toilet paper after she had "messed on" or soiled those items. Jail staff had handled the request that night. By that point, Jail deputies and medical staff were aware that Amber was detoxing from drugs, based on her remarks to Deputy Calentine and her uncontrolled bowel movements.

64.     Around that time, Defendant Carine Wood, the Jail's sole Medical Officer (J-23), who is certified as a Pharmacy Technician, asked Sergeant Randy Cline (J-15) if Amber was given both types of Medical Kites, a Yellow Kite for general medical conditions and a Blue Kite for Medications for Opioid Use Disorder ("MOUD"). Sergeant Cline responded that Amber had the Yellow and Blue Kites, but he was unsure whether she had filled them out. Although it was known among the Medical Officer and Jail deputies that Amber was suffering from severe withdrawal symptoms, including uncontrolled bowel movements, neither Defendant

COMPLAINT - 17

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

Wood nor any other employee of the Jail submitted a Blue MOUD Kite on Amber's behalf or otherwise referred Amber to the Jail Physician to be placed on a MOUD program.

65.     On Thursday, April 27, Amber repeatedly used the intercom call light in I-Mod Cell # 2, asking for the lights to be turned off and to be treated for back pain. She also complained that Jail staff had refused to take her to the hospital. Her calls were ignored by Jail staff.

66.     According to the Jail's Procedure Manual (again, which was not in use at the time of Amber's incarceration), cell checks need only be conducted on an hourly basis and up to 90 minutes may pass before a cell check is required. This procedure is grossly out of step with national standards, which requires observation every 30 minutes—putting Amber at risk of serious harm.

67.     Around 8:00 p.m. that night, Defendants Dusty Mullen (J-20) and Brian Krueger (J-14), Corrections Deputies, observed Amber causing a "disruption" with a broom. After Amber allegedly attempted to assault the deputies with the broom, Defendants Mullen, Krueger, and Jacob Caravalho (J-18) placed Amber in handcuffs and aggressively transferred her to a restraint chair, while she was actively and obviously suffering from withdrawal symptoms.

68.     At 8:15 p.m., Amber was placed on suicide watch with 15-minute checks, while still handcuffed to the restraint chair. Again, these Jail deputies (and other Jail staff) were well aware that Amber was detoxing and potentially suicidal.

COMPLAINT - 18

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

69.    Only after Amber was forced into a restraint chair did Deputy Caravalho contact Okanogan Behavioral Healthcare Center ("OBHC").

70.    At around 9:10 p.m. that night, on April 27, while Amber was in the restraint chair, Amber was assessed by an OBHC Substance Use Disorder Professional ("SUDP").

71.    Amber reported to the SUDP that she had smoked 30 fentanyl pills daily for the past two years. Amber requested Suboxone, a medication to treat OUD, explaining she was experiencing severe withdrawal symptoms, including uncontrolled bowel movements, diarrhea, cold sweats, chills, and vomiting. She reported being scared and was apologetic for her behavior but apparently denied any suicidal ideation or suicide attempts to the SUDP. The SUDP noted that Amber was not responding to internal stimuli and requested a Blue Kite, so Amber could start a MOUD program.

NARRATIVE:

Amber was restrained in chair due to attempting to hit someone with a Broom. She presents in withdrawal reporting smoking 30 Fentanyl pills daily for past 2 years. She would like to get on suboxone and reports cold sweats diarrhea, chills throwing up as withdrawal. She denies any SI/SA and no plan to harm others. She was not responding to internal stimuli and denies any hallucinations. Reports being scared and apologetic for her behavior. She reports attempting to get out of restraints and "I broke my wrist. I heard it pop". She reports not knowing what she would do if broke free. She also reports uncontrolled bowels due to her withdrawals.

REFERRED TO MOUD / BLUE KITE

Staffed in Suboxone [signature] 4/28/23

DISPOSITION:
HOUSING: ☐ GEN. POP. ☐ HOUSE ALONE ☑ HOLDING CELL ☐ SUICIDE WATCH ☐ CHKS EVERY ___ MIN.
INTERACTION PROTOCOL: ☑ NO SPECIAL TREATMENT, FOLLOW NORMAL PROTOCOLS   ☐ SEE BELOW:

PLANNED FOLLOW-UP CONTACT: ☑ NONE ☐ STAFF REQUEST ☐ F/U SCHEDULED

COMPLAINT - 19

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

72.     OUD is a type of substance use disorder defined as "the maladaptive use of opioids . . . resulting in two or more criteria that reflect impaired health or function over a 12-month period." OUD does not require physiological tolerance or dependence to be considered a substance use disorder.

73.     Amber's OUD was severe and substantially limited her major life activities. It was a disability. Because of her disability, Amber had difficulty regulating her behavior, working, communicating, sleeping, concentrating, and decision-making; and when she was in withdrawal from opioids, Amber's disability affected her physical health in extreme ways.

74.     Despite knowing that Amber was a daily fentanyl user (up to 30 pills a day), Jail medical and corrections staff did not did not administer the Clinical Opiate Withdrawal Scale ("COWS"), which is the standard of care for those suffering from OUD; they did not implement any detox or suicide prevention protocol; they did not request that Amber be seen or treated by a qualified medical professional; and they did not classify her as a special needs detainee in need of special housing.

75.     To the contrary, Okanogan County's Medical Officer, Defendant Wood, and/or its subcontractor, the SUDP from OBHC, concluded Amber needed no special treatment or follow-up contact by a qualified medical professional. It is a common and widespread practice at the Jail to ignore relevant medical information in a measured attempt to avoid liability with deliberate indifference, by claiming lack of knowledge.

COMPLAINT - 20

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

76.     At 9:45 p.m., Amber was taken off suicide watch.

77.     Fifteen minutes later, at 10:00 p.m., Jail deputies finally removed Amber from the restraint chair—after Amber had been restrained for about two hours while experiencing severe withdrawal symptoms. Jail deputies kept her in I-Mod Cell # 3 for observation for the remainder of the evening. Amber was still deemed to be on lock down status.

78.     As expected, Amber's withdrawal symptoms only worsened.

79.     On Friday, April 28, Briana Pardo, a MOUD RN who, upon information and belief, was hired as an employee, subcontractor, or agent of the Jail, received the Blue Kite for Amber. But Amber was never put on a MOUD program because, pursuant to the Jail's established practice, the Jail's medical provider conducted virtual visits with patients only on Tuesdays and Thursdays—meaning the earliest Amber could have received medical care to treat her severe withdrawal symptoms would have been on Tuesday, May 2:

**Carine Wood**

| | |
|---|---|
| From: | Briana Pardo |
| Sent: | Friday, May 05, 2023 5:20 PM |
| To: | Carine Wood |
| Subject: | RE: Question |

Hi,

Yes, I did receive a blue kite from her. It looks like it was dated Friday 4/28. The provider only see's patients on Tuesdays and Thursdays so she was not in custody at the jail to be seen on Tuesday 5/2 or Thursday 5/4. So unfortunately was not started on the program before she was released. Typically after their video visit with the provider I can get them started that evening unless the provider recommends waiting which she will do when their last use was within the last 24 hours.

Thank you,
Briana Pardo
MOUD RN

COMPLAINT - 21

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

80.    The Jail's practice of requiring detainees and inmates to wait days to be seen virtually by the Jail Physician—even those with medical emergencies, like Amber—violates the Jail's written procedures specifying that the Jail Physician, who was then Defendant Dr. Bradley Craig, would be "on-call at all times." Although the Jail's procedure manual was apparently never used, Okanogan County, and the Policymaking and Supervisory Defendants, were undeniably aware that the Jail Physician (or another qualified medical provider) needed to be always be on-call to address medical emergencies, like Amber's.

81.    Had Defendant Wood or other Jail staff put Amber on an adequate MOUD program, including the use of a MOUD medication, when they became aware that Amber was detoxing on April 26, Amber could have been seen by Defendant Craig on Thursday, April 27—and placed on an appropriate MOUD program that same day.

82.    Moreover, had Defendant Craig and other Jail staff referred to the Jail's own written procedures (whether in use or not), requiring Defendant Craig to be "on-call at all times," Amber could have been seen by him on Friday, April 28—and, again, placed on an adequate MOUD program that same day.

83.    Even if Jail staff had insisted that Amber be seen by Defendant Craig (they did not), the Jail's "opiate detox protocol" includes only clonidine, hydroxyzine (an antihistamine), ibuprofen, bismuth tablets (Pepto-Bismol), and Gatorade.

COMPLAINT - 22

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

84.     Yet, the only MOUD medications, also referred to as Medication-Assisted Treatment ("MAT"), approved by the U.S. Food and Drug Administration ("FDA") include methadone, naltrexone, or buprenorphine (also known as Suboxone). In 2015, the American Society of Addiction Medicine, the leading addiction medicine professional society in the country, issued guidelines recommending that people with OUD in the criminal justice system should be treated with these FDA-approved MOUD/MAT medications. Since at least 2018, these FDA-approved MOUD/MAT medications have also been recommended in NCCHC's standard guidelines, as developed with the National Sheriffs' Association.

85.     Notably, Okanogan County's opiate detox protocol does not include any FDA-approved MOUD/MAT medications to ease withdrawal symptoms or to help detainees or inmates stop or reduce opioid use. According to NCCHC, for opioid withdrawal, methadone and buprenorphine are necessary to reduce symptoms and support completion of a withdrawal management program, as opposed to than clonidine. Clonidine and the other "comfort" medications available under the Jail's opiate detox protocol (e.g., an antihistamine, ibuprofen, Pepto-Bismol and Gatorade) may provide minor relief for the physical symptoms of withdrawal, but they do not treat the underlying disability, OUD, in the way that providing FDA-approved MOUD/MAT medications would.

86.     On Saturday, April 29, Amber pressed the intercom call light multiple times every hour, explaining that she felt like she was choking and going into shock.

COMPLAINT - 23

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

Her calls were largely ignored by Jail staff—purportedly because she was still on lock down status and could only be out of her cell one hour per day.

87.    At around 10:00 a.m. that day, Amber was allowed a scheduled one hour outside her cell to take a shower. Jail staff changed her linens and uniform while Amber was showering, presumably because of Amber's uncontrolled bowel movements. When Amber returned to her cell, she continued to use the intercom call light, asking for help. Her calls were, once again, largely ignored.

88.    At around 1:40 p.m. that day, Amber again complained that she felt she was choking and going into shock. This time, Jail staff decided to offer Amber outdoor recreation time to get "fresh air" and escorted her to the outdoor recreation area. As Amber was being moved, she told Jail staff that she wanted to cut off her hair because it was causing her a headache. A Jail deputy informed her that she would have to wait until later in the week.

89.    Twenty-two minutes later, at 2:02 p.m., the Jail staff discovered Amber in the unsupervised bathroom in the outdoor recreation area. She was unresponsive, unconscious, and blue in the face, hanging from her Jail-issued pants tied around a bathroom handrail. She did not appear to be breathing. Jail staff also noticed her feces below the handrail.

90.    Since 2017, Okanogan County had been on notice that the very bathroom where Amber took her life—after suffering from debilitating withdrawal symptoms for days—"could easily provide undue privacy and aide in concealing

COMPLAINT - 24

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

illegal or dangerous actions," such as inmate suicides. Rather than adopt the DOC's recommendation to reduce the enclosure surrounding that bathroom to improve Jail employees' visibility and inmate safety, Okanogan County "buried" the 2017 DOC audit and "did not take any action on any of the recommendations." Had Okanogan County acted on DOC's very specific (and easily implemented) policy to reduce the enclosure surrounding that bathroom, it would have saved Amber's life.

91. After finding Amber's body, Jail staff requested an ambulance and attempted lifesaving measures via CPR. Upon information and belief, none of the Jail staff who attempted to save Amber's life were certified in CPR/AED.

92. About nine minutes after Amber was found, at 2:11 p.m., a Jail deputy went to search for the Jail's AED, but he could not find it after several minutes of searching. Around the same time, outside emergency personnel started arriving to perform lifesaving measures on Amber. An AED was finally used by outside emergency personnel, but Amber remained unresponsive.

93. Amber was transferred to Mid Valley Hospital in Omak, WA via ambulance at approximately 2:35 p.m.

94. Thereafter, Amber was transferred from Mid Valley Hospital to Providence Sacred Heart Medical Center in Spokane, WA to receive a higher level of care.

COMPLAINT - 25

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

95.    After several days of treatment at Sacred Heart Medical Center, Amber remained unresponsive. On May 4, Amber was removed from life support and pronounced dead at 2:55 p.m.

96.    The Spokane County Medical Examiner completed an autopsy report for Amber on May 17, 2023. The Medical Examiner found the cause of Amber's death was "complications of ligature hanging" and the manner of her death was "suicide."

97.    During Amber's entire incarceration at the Jail, despite suffering from severe withdrawal symptoms and the knowledge that Amber had smoked up to 30 fentanyl pills a day, Amber was *never* seen in person by a qualified medical professional who could have placed her on an adequate MOUD/MAT program or a suicide prevention protocol. Had she been, her tragic death could have been prevented—but the Jail's established polices, practices, and customs dictated otherwise.

98.    At the time of Amber's death, it was Okanogan County's policy, practice, and custom to deny medically appropriate treatment to fentanyl or other drug users.

99.    Prior to her death, Amber was a healthy 35-year-old woman and member of the Colville Tribe, who loved to bead, travel, and be outdoors. Amber's three children were her greatest love in life, Zacharias Elwell (18), E.E. (16), and Q.M. (15), all of whom were minors at the time of her death.

COMPLAINT - 26

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

### C. *Okanogan County Corrections Fatality Review After Amber's Death*

100.     After Amber's death, the Chief Jail Administrator of the Island County Sheriff's Office reviewed the circumstances leading to Amber's death at the request of Okanogan County's Sheriff, Defendant Paul Budrow.

101.     Because Okanogan County did not have a formal policy manual or procedures manual in place at the time of Amber's death, the Island County official was unable to review the nature of Jail policies as they related to Amber's death to ensure policies and processes were followed appropriately. At a minimum, the Island County official recommended that Okanogan County develop and adopt policies on the following topics:

- •     Inmate Reception;

- •     Inmate Safety Checks;

- •     Special Management Inmates;

- •     Inmate Classification;

- •     Reporting In-Custody Deaths;

COMPLAINT - 27

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

- Medical Screening;

- Mental Health Services;

- Detoxification and Withdrawal;

- Suicide Prevention;

- Use of Force; and

- Use of Restraints

102. The Island County investigation found that none of the Jail staff who initially responded to Amber were current in CPR or AED training, which is problematic given that both CPR and AED were used in an attempt to save Amber's life. The report noted that Jails require annual training for, *inter alia*, suicide prevention, first-aid, and CPR, as well as working with inmates with mental health issues. The Island County official expressly recommended that all Jail staff and supervisors receive ongoing training in the following: suicide prevention, substance use disorders, MOUD, MAT, de-escalation tactics, recognizing mental health disorders, Crisis Intervention Team, and some form of Crisis Negotiation Training.

103. The Island County investigation report likewise recommended that Okanogan County conduct a staffing analysis to determine if the current staffing levels address the public safety and to review and update position descriptions to reflect areas of work and responsibility.

104. The Island County investigation further found that most of the Jail's supervisory team lacked career-level certification and had little experience outside

COMPLAINT - 28

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

their working environment—thereby isolating the Jail's leadership from "growing and developing with current best practices and norms within the corrections profession."

105.   Critically, the Island County investigation report recommended that Okanogan County immediately adopt and implement policies, procedures, and programs specific to medical and mental health issues, including:

- SUD/Mental Health/Medical Screening;

- Medical Services Contract, including an expansion of Okanogan County's medical contract to provide RN level nursing coverage in the Jail daily and preferably during the waking hours;

- Mental Health Program;

- MAT/MOUD Services, including ensuring they are "as low barrier as possible"; and

- Medications

106.   Finally, the Island County investigation report concluded that if an adequate MAT/MOUD program was not low-barrier, Jail staff must "monitor subjects more closely as they go through the withdrawal process in order to prevent suicide or intervene during a medical emergency." The report noted, however, that because this "did not happen with [Amber], . . . she succumbed to suicide as the final option in her mind."

107.   Okanogan County, by and through its Policymaking and Supervisory

COMPLAINT - 29

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

Defendants, despite knowledge of the recent deaths, pain and suffering, and serious medical emergency experiences by pretrial detainees and inmates caused by the antiquated physical condition, understaffing, and ill-trained staff at its Jail, has failed to (and continues to refuse to) take any steps to ameliorate, correct, or remedy the deplorable conditions and practices of the Jail, or to relieve the unnecessary suffering and punishment experienced by pretrial detainees. As a direct and proximate result of being understaffed, pretrial detainees, including Amber, have been subjected to cruel and unusual punishment, pain and suffering, and there have been increased occurrences among the detainee and inmate population of medical negligence, substantial injury, and even death.

108.    Okanogan County has also failed and refused to appropriate and/or distribute adequate funds for the staffing of the Jail, as well as budgets for the medical and health care for the inmate population of the Jail. The refusal of Okanogan County to so act is and was in derogation of its duty to appropriate and provide necessary funds to keep its Jail properly staffed, and in a safe and suitable condition.

109.    The failure and omissions of the Okanogan County, by and through Policymaking and Supervisory Defendants, were intentional, reckless, willful, and in callous disregard of the constitutional, statutory, and common law rights of its pretrial detainees. These Defendants acted with similar disregard to the working conditions and inadequate training of Jail deputies—who, as a result of

COMPLAINT - 30

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

understaffing, are subjected to working "so much overtime"—affecting the totality of the behaviors, practices, and conditions at the Jail. As a result of Defendants' intentional policy choices, pretrial detainees, including Amber, have been subjected to cruel and unusual punishment, pain and suffering, and there have been increased occurrences among the detainee and inmate population of attempted suicides, actual suicides, tension, disturbances, medical negligence, injury, and death.

110.   Okanogan County, by and through Supervising and Policymaking Defendants, has been advised on a routine basis that the conditions and practices of the Jail are dangerous and inherently likely to lead to injury or death; non-compliance of the Jail with Washington State Law and the Jail's own policy; and the need to correct the deplorable conditions, practices, understaffing, and underfunding of the Jail.

111.   Okanogan County, by and through its Policymaking and Supervising Defendants, had an unwritten policy of understaffing and indifference to inmate supervision that was maintained with deliberate indifference. Okanogan County and its Supervising Defendants know that the Jail is understaffed, that Jail staff are undertrained, and that their Jail personnel often have trouble completing all their duties as a result. Yet these Defendants failed to take any steps to correct these inadequacies.

112.   The Jail deputies and medical staff named herein failed to heed or respond to Amber's obvious physical suffering, and these Defendants deliberately

COMPLAINT - 31

ignored and failed to adequately safeguard Amber from her pain and suffering resulting from her medical conditions; these Defendants were also deliberately indifferent to Amber's medical needs, suffering, physical condition, and pleas for relief.

## V.     CLAIMS

### FIRST CLAIM FOR RELIEF

**Negligence, Gross Negligence, and Medical Negligence**

*Against Okanogan County*

113.    Plaintiffs re-allege and incorporate by reference herein all allegations previously made.

114.    Okanogan County had a nondelegable duty to care for pretrial detainees and inmates and provide reasonable safety and medical care.

115.    This duty extends to foreseeable medical harms.

116.    This duty is an affirmative one under both Washington State and federal law because prisoners, by virtue of incarceration, are unable to obtain medical care for themselves.

117.    This duty requires officials to consider what is the safest and most humane means of incarceration of their prisoners and what is most conducive to their health, well-being, and safety, despite the costs. As a matter of law, Washington courts have long recognized a jailer's special relationship with detainees and inmates, particularly the duty to ensure health, welfare, and safety. This heightened

COMPLAINT - 32

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

duty is derived from the special relationship between custodians and the individuals entrusted to their care. Detainees and inmates rely completely on the government to make decisions as to their safety and health care, similar to students relying on schools, guests on innkeepers, and patients on hospitals.

118.    Contributory negligence has no place in such a scheme, and Okanogan County is therefore responsible for the negligence of all Defendants described herein, as well as any responsible subcontractors or third-party providers.

119.    Okanogan County is vicariously liable for the breaches of duty of its employees and agents.

120.    Okanogan County breached this duty and was negligent when it failed to adopt and follow proper policies, procedures, and training on the provision of reasonable and necessary assessment and treatment of detainees or inmates with medical needs.

121.    Okanogan County breached this duty and was negligent when it failed to adequately assess and treat Amber's medical needs when she was obviously detoxing from frequent fentanyl use. Indeed, because Amber's obvious medical needs were entirely ignored, Okanogan County was grossly negligent.

122.    Okanogan County breached its duty and was negligent when it failed to ensure adequate and proper staffing at the Jail.

123.    Okanogan County breached its duty and was negligent when it failed to ensure that Amber was properly supervised and/or that cell checks were conducted

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

in a safe, timely, and consistent manner.

124.   Okanogan County breached its duty and was negligent when it ignored notification and developing evidence of Amber's serious medical condition.

125.   Okanogan County breached its duty and was negligent when it failed to assess and treat Amber properly prior to her death.

126.   As a direct and proximate result of the breaches, failures, and negligence of Defendants, Amber experienced extreme pre-death pain, suffering, embarrassment, terror, and, ultimately, death.

127.   As a direct and proximate result of Defendant Okanogan County's breaches of duty, Amber's children—Zacheriah, E.E., and Q.M.—have sustained economic and noneconomic damages, including those allowed by RCW 4.20 *et seq*., and which include, without limitation, the loss of familiar association with their mother, past and future medical expenses, past and future lost income or earning capacity, loss of consortium, emotional distress, grief, loss of enjoyment of life, inconvenience, mental anguish, and pain and suffering and in amounts to be proven at trial.

128.   As a direct and proximate result of Defendant Okanogan County's wrongful acts and/or omissions, the Estate of Amber Marchand has sustained damages including, without limitation, the loss of the accumulation of income and incurred medical, funeral, and burial expenses, and the conscious pain, suffering, anxiety and fear of impending death experienced by the decedent, in such amounts

COMPLAINT - 34

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

as will be proven at the time of trial together with interest thereon at the statutory rate from the date of death or the date the expenses were incurred.

## SECOND CLAIM FOR RELIEF

### Civil Rights Violations – 42 U.S.C. § 1983

*All Defendants*

129.   Plaintiffs re-allege and incorporate by reference herein all allegations previously made.

130.   The acts and failure to act described above were done under color of law and are in violation of 42 U.S.C. § 1983, depriving Amber Marchand of her rights and privileges secured by the Fourteenth Amendment, including the right to adequate medical care and to be provided safe conditions.

131.   At the time Amber was detained by Okanogan County, it was clearly established that the Fourteenth Amendment imposes a duty on jail officials to provide humane conditions of confinement, including adequate medical care, and to take reasonable measures to guarantee the safety of detainees and inmates.

132.   Okanogan County and its policymakers knew of and disregarded the excessive risk to inmate health and safety caused by the lack (or inadequacy) of formal and informal policies and procedures, including a lack of training, staffing, funding, and supervision.

133.   Okanogan County and its policymakers knew of this excessive risk to inmate health and safety because it was obvious in Amber's case and because

COMPLAINT - 35

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

numerous other pretrial detainees and inmates had been injured and/or killed in the past, as a result of Okanogan County's grossly inadequate policies.

134.   Okanogan County and its policymakers knew of this excessive risk to inmate health and safety because they were identified as precipitating factors to the in-custody death of other detainees and inmates who have died in recent years at that Jail and were the subject of lawsuits and/or investigations.

135.   Okanogan County and its policymakers were responsible for implementing a policy, practice, or custom of maintaining constitutionally deficient safety, medical care, and mental health care, as well as constitutionally deficient training to ensure safety and adequate healthcare—which placed pretrial detainees like Amber at substantial risk.

136.   Even absent the prior in-custody injuries, deaths, and near-deaths, it was evident that Okanogan County's policy, practice, or custom of maintaining constitutionally deficient safety, medical care, and mental health care would result in the harm caused here. Okanogan County and its policymakers were expressly informed that (1) they had failed to adopt many policies or procedures that would prevent inmate deaths, yet they deliberately did nothing to adopt such policies or procedures; (2) many of their official policies or procedures would result in inmate deaths or injury, yet they deliberately did nothing to address them; (3) many of their existing policies or procedures were being ignored by Jail deputies and medical staff, which would result in inmate deaths, yet they deliberately did nothing to address Jail

COMPLAINT - 36

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

staff's failure to follow such policies or procedures; and (4) many of their unofficial or *de facto* policies would result in inmate deaths, yet they deliberately did nothing to address these unofficial or *de facto* policies.

137. Okanogan County and its policymakers were aware of and disregarded the excessive risk to inmate health and safety resulting from their failure to provide reasonable medical care and treatment.

138. This callousness reflects a policy, practice, or custom wherein Okanogan County and its policymakers either intentionally violated or were deliberately indifferent to the health, welfare, and civil rights of Amber and her fellow detainees and inmates.

139. As a direct and proximate result of the unconstitutional conditions of confinement and deliberate indifference of Okanogan County and its policymakers, Amber died a terrible and easily preventable death. She suffered pre-death pain, anxiety, and terror before leaving behind a loving family.

140. As a direct and proximate result of the deliberate indifference of Okanogan County and its policymakers, Amber's children have suffered and continue to suffer extreme grief and harm due to mental and emotional distress as a result of Amber's wrongful death.

141. Likewise, each individually named Defendant's actions or inactions with respect to the conditions under which Amber was confined, described below, were taken knowingly, purposefully, and intentionally.

COMPLAINT - 37

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

142. Amber's conditions of confinement put her at substantial risk of suffering serious harm or death.

143. Each individually named Defendant did not take reasonable, available measures to abate that risk, even though reasonable jail officials, deputies, or healthcare providers would have appreciated the high degree of risk involved, making the consequences of Defendants' conduct obvious.

144. Each individually named Defendant displayed deliberate indifference when they:

(a) Failed to adequately screen Amber for serious medical needs;

(b) Failed to adequately classify Amber as a special management needs detainee;

(c) Failed to provide prompt medical attention to Amber's serious medical needs;

(d) Failed to have and/or follow a detoxification program, such as a MOUD program;

(e) Failed to follow the standards as published by the NCCHC;

(f) Failed to hire or contract qualified medical personnel at the Jail;

(g) Seriously aggravated Amber's medical condition by allowing Jail medical staff to operate without the benefit of physician supervision;

(h) Failed to adequately respond to a medical emergency, including, without limitation, the failure to obtain CPR/AED certification; and/or

COMPLAINT - 38

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

(i)    Failed to adequately train Jail staff in medical screening, classification, treatment for detainees or inmates detoxing (e.g., MOUD), and/or emergency response (e.g., CPR/AED training).

145.   By failing to take such reasonable measures, each individually named Defendant caused Amber's death.

146.   That is, as a direct and proximate result of the individual Defendants' actions and inactions, and the deliberate indifference of each individually named Defendant, Amber died a terrible and easily preventable death. She suffered pre-death pain, anxiety, and terror before leaving behind her three young sons.

147.   As a direct and proximate result of the deliberate indifference of each individually named Defendant, Amber's sons have suffered the loss of familial association with Amber, in violation of their Fourteenth Amendment rights. Amber's sons have suffered and continue to suffer extreme grief and harm due to mental and emotional distress as a result of Amber's wrongful death.

148.   Each individually named Defendant has shown reckless and careless disregard and indifference to detainees' and inmates' rights and safety and is therefore subject to an award of punitive damages to deter such conduct in the future.

### THIRD CLAIM FOR RELIEF

**Americans with Disabilities Act Violations – 42 U.S.C. § 12132**

*Against Okanogan County*

149.   Plaintiffs re-allege and incorporate by reference herein all allegations

COMPLAINT - 39

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

1    previously made.

2    150.    Under the ADA, "no qualified individual with a disability shall, by

3    reason of such disability, be excluded from participation in or be denied the benefits

4    of the services, programs, or activities of a public entity, or be subjected to

5    discrimination by such entity." 42 U.S.C. § 12132.

6    151.    The ADA defines the term "qualified individual with a disability" as an

7    individual with a disability who, with or without reasonable provision of aids and

8    services, meets the essential eligibility requirements for the receipt of services by a

9    public entity. 42 U.S.C. § 12131(2); 28 C.F.R. § 35.104.

10    152.    The ADA defines "disability" as a physical or mental impairment that

11    substantially limits one or more major life activities. 42 U.S.C. § 12102(1)(A); 28

12    C.F.R. § 35.108.

13    153.    People with OUD suffer from a physical or mental impairment that

14    substantially limits one or more major life activities. 28 C.F.R. § 35.108(b)(2)

15    (defining physical or mental impairment to include "drug addiction"). OUD

16    substantially limits major life activities, including caring for oneself, learning,

17    concentrating, thinking, and communicating. 42 U.S.C. § 12102(2)(A). OUD also

18    limits the operation of major bodily functions, such as neurological and brain

19    functions. *Id.* § 12102(2)(B).

20    154.    There is overwhelming consensus in the medical community that FDA-

21    approved MOUD/MAT medications are an effective treatment option for persons

COMPLAINT - 40

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

with OUD. They work by blocking or partially blocking the opioid receptors in the brain and have the effect of normalizing brain chemistry, blocking the euphoric effects of opioids, relieving physiological cravings, and normalizing body functions—without the negative effects of opioids. They are particularly effective at reducing the risk of withdrawal or overdose death.

155.   Amber, who suffered from OUD, was a qualified individual with a disability within the meaning of 42 U.S.C. §§ 12131(2) and 12102(1)(A), as well as 28 C.F.R. §§ 35.104 and 35.108.

156.   Okanogan County is a public entity within the meaning of 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.

157.   Okanogan County provides medical services to individuals incarcerated at the Jail, including medication services.

158.   Amber met the ADA's essential eligibility requirements for the receipt of medical services, including access to medications, purportedly provided by Okanogan County to individuals incarcerated at the Jail.

159.   Although Amber was a qualified individual within the meaning of the ADA, Okanogan County denied MOUD/MAT to Amber on the basis of her disability: OUD. Okanogan County provides medication services to individuals as necessary for other diseases and disorders, but have a policy and practice of denying FDA-approved MOUD/MAT medications to individuals suffering from OUD. This violates the ADA.

COMPLAINT - 41

160.   As a direct and proximate result of Okanogan County's unlawful discrimination against Amber in violation of the ADA, Amber suffered such immeasurable pain and suffering while at the Jail that she ultimately took her own life.

## FOURTH CLAIM FOR RELIEF

### Violations of Section 504 of the Rehabilitation Act – 29 U.S.C. § 794

*Against Okanogan County*

161.   Plaintiffs re-allege and incorporate by reference herein all allegations previously made.

162.   Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, also requires the recipients of federal funds to reasonably accommodate persons with disabilities.

163.   As a recipient of federal financial assistance, Okanogan County discriminated against Amber on the basis of disability in violation of Section 504 of the Rehabilitation Act by, *inter alia*, failing to institute adequate policies and procedures or train its employees on how to accommodate individuals with OUD, a disability, such as Amber.

164.   Specifically, Okanogan County denied MOUD/MAT to Amber (and others incarcerated at the Jail) on the basis of her OUD. Okanogan County provides medication services to individuals as necessary for other diseases and disorders, but it has a policy and practice of denying FDA-approved MOUD/MAT medications to individuals suffering from OUD.

COMPLAINT - 42

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

165. As a direct and proximate result of Okanogan County's unlawful discrimination against Amber in violation of Section 504 of the Rehabilitation Act, Amber suffered such immeasurable pain and suffering while at the Jail that she ultimately took her own life.

## VI.   JURY DEMAND

166. Plaintiffs hereby demand a trial by jury.

## VII.   RELIEF REQUESTED

167. Damages have been suffered by Plaintiffs, and to the extent any state law limitations on such damages are purposed to exist, they are inconsistent with the compensatory, remedial, and/or punitive purposes of federal law, and therefore, any such alleged state law limitations must be disregarded in favor of permitting an award of the damages prayed for herein.

168. Wherefore, Plaintiffs request a judgment against all Defendants:

(a)   Fashioning an appropriate remedy and awarding economic and non-economic damages, including damages for pain, suffering, terror, loss of consortium, loss of familial relations, and loss of society and companionship pursuant to 42 U.S.C. §§ 1981a, 1983, 1988, 2000e-5(g)(1), 12117(a), or other applicable laws, in an amount to be determined at trial;

(b)   Punitive damages;

COMPLAINT - 43

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115

(c)     Awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C.

§§ 1988 and 12205, or as otherwise available under applicable laws;

(d)     Declaring all Defendants jointly and severally liable;

(e)     Awarding any and all applicable interest on the judgment; and

(f)     Awarding such other and further relief as the Court deems just and

proper.

Respectfully submitted this 8th day of September, 2025.

GALANDA BROADMAN, PLLC

s/ *Gabe S. Galanda*

Gabriel S. Galanda, WSBA # 30331
s/ *R. Joseph Sexton*

R. Joseph Sexton, WSBA # 38053
s/ *Ryan D. Dreveskracht*

Ryan D. Dreveskracht, WSBA # 42593
s/ *Shelby R. Stoner*

Shelby R. Stoner, WSBA # 52837
P.O. Box 15146 Seattle, WA 98115
(206) 557-7509 Fax: (206) 299-7690
Emails: gabe@galandabroadman.com
        joe@galandabroadman.com
        ryan@galandabroadman.com
        shelby@galandabroadman.com

*Attorneys for Plaintiffs*

COMPLAINT - 44

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115